AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Alabama

| | |
|---|---|
| SHUNTA DAUGHERTY </br> *Plaintiff* </br> v. </br> HAROLD HURST </br> *Defendant* | ) </br> ) </br> ) Civil Action No. 1:17-cv-00072-CG-C </br> ) </br> ) </br> ) |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:  Chief of Police Lawrence Battiste, City of Mobile Police Department
2460 Government Blvd, Mobile AL 36606

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
   See Attachment A

| Place: Nexus Caridades Attorneys, Inc. </br> 44 Broad St, NW, Ste 200 </br> Atlanta, GA 30303 | Date and Time: </br> 07/05/2017 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 06/20/2017

CLERK OF COURT

_____   OR   p/ *Mario Williams*
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
SHUNTA DAUGHERTY , who issues or requests this subpoena, are:

Mario Williams, 44 Broad St NW, Ste 200, Atlanta, GA 30303, 404-654-0244, mwilliams@nexuscaridades.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | | |
|---|---|---|
| **SHUNTA DAUGHERTY**, individually, and as the administrator of the estate of **MICHAEL DASHAWN MOORE**, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 1:17-cv-00072-CG-C |
| v. | ) ) | |
| **HAROLD HURST**, in his individual capacity, | ) ) ) ) | JURY DEMANDED |
| Defendant. | ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS
OR TO PERMIT INSPECTIONS OF PREMISES
ATTACHMENT A**

This is "Attachment A" to the subpoena dated June 20, 2017 and addressed to Chief of Police Lawrence Battiste, City of Mobile Police Department. Pursuant to this subpoena in civil action 1:17-cv-00072-CG-C before the Mobile Division of the United States District Court for the Southern District of Alabama, please provide a certified copy of the following items:

1. All emails regarding the fatal shooting of Michael Moore on June 13, 2016. *Please see attached ESI instructions and contact counsel for search term methodologies.*

2. All vehicle pursuit policies and procedures that were in effect on June 13, 2016.

3. All use of force policies and procedures from January 1, 2010 through present, including the use of force policy and procedure that was in effect on June 13, 2016, the day of the subject shooting.

4. All policies and procedures regarding vehicle stops that were in effect on June 13, 2016.

5. All policies and procedures regarding emergency care protocol for a person who has been shot that were in effect on June 13, 2016.

6. All use of force exams taken by Officer Harold Hurst during his entire time as MPD officer.

7. All training videos viewed by Officer Hurst regarding use of deadly force, use of force, and traffic stops.

8. Complete personnel file for Officer Hurst including all interview notes; written or recorded statements; references; records regarding resignation, termination or reasons for leaving employment; disciplinary records; job descriptions; job performance evaluations; reprimands; promotions; and commendations.

9. All investigative files regarding investigations that involved Officer Hurst, including all supplemental reports and internal affairs files.

10. All written or electronic applications for employment submitted to MPD by Harold Hurst.

11. All documents that demonstrate the hiring process that applied to the hiring of Harold Hurst as a MPD Officer.

12. All pre-employment exams of Officer Hurst, including the entire background investigation file; his psychological assessment; his pre poly graph questionnaire; and his poly-graph exam.

13. All documents that demonstrate your agency sought background information from Officer Hurst's former employers.

14. All other files of Officer Hurst, including any files kept by the Chief or any other supervisory official.

15. All documents that describe the manner in which Officer Hurst received notification of policy changes that applied to MPD Officers.

16. All documents that demonstrate the procedures that Officer Hurst followed to acknowledge that he read policies and procedures applicable to him.

17. A copy of the actual training manual that Officer Hurst received upon first being employed by MPD.

18. All complaints made against Officer Hurst by non-police officials.

19. All complaints made against Officer Hurst by police officials.

20. All documents that show the phone number of Officer Hurst's government issued phone.

21. All policies and procedures regarding the reporting of use of force that were in effect on June 13, 2016.

22. All supplemental reports regarding the shooting of Michael Moore on June 13, 2016.

23. All use of force reports regarding the shooting of Michael Moore on June 13, 2016.

24. All incident reports regarding the shooting of Michael Moore on June 13, 2016.

25. All photographs related to the shooting of Michael Moore on June 13, 2016.

26. A copy of all MPD Facebook entries from June 1, 2016 through the present.

27. All files and documents, including all investigative files, regarding the falsifying of police records--see enclosed article to understand that subject matter to which we are referring.

28. All video that captured the subject event on June 13, 2016.

29. All video that captured the scene where the shooting took place. There were multiple MPD vehicles that arrived on scene. We want each video from each vehicle and all other video, including any phone or hand held cameras.

30. All audio recordings, including 911 and radio communications, related to the subject incident on June 13, 2016 including any recordings of the two passengers of the subject vehicle.

31. All documents that demonstrate the make, model and year of the MPD vehicle that Officer Hurst was driving on June 13, 2016.

32. All documents that demonstrate the video recording system present in the MPD vehicle that Officer Hurst was driving on June 13, 2016.

33. All policies and procedures regarding body cameras that were in effect on June 13, 2016.

34. All documents that demonstrate body cameras issued out to officers from June 1, 2016 through June 13, 2016.

Please refer to the attached Preservation of Evidence letter date June 20, 2016, and electronic discovery instructions.

# WILLIAMS OINONEN LLC

THE GRANT BUILDING, SUITE 200
44 BROAD STREET, NW
ATLANTA, GA 30303
HTTP://WWW.GOODGEORGIALAWYER.COM
TEL.: (404) 654-0288
FAX: (404) 592-6225

June 20, 2016

**SENT VIA HAND DELIVERY TO CLERK OF CITY AND EMAIL TO**
lisa.carrol@cityofmobile.org
City of Mobile
**Attn**: Sandy Stimpson, Mayor
205 Government Street
Mobile, AL 36602

    **Re**: **Preservation of evidence letter regarding officer involved shooting of Michael Moore that occurred on or about June 13, 2016**

Dear Mayor Stimpson:

My law firm represents the family of Michael Moore with respect to the officer involved shooting that led to Mr. Moore's death.

**Foremost, please forward this preservation-of-evidence letter to all relevant persons, and third parties, immediately**.

This letter places you on notice to preserve all video, audio, investigative files, memorandums, notes, and all other information related to the officer involved shooting of Michael Moore.

**Please follow the enclosed instructions when preserving the evidence with respect to this preservation letter**. The enclosed instructions represent the manner in which I will request that you produce this evidence in the upcoming civil trial.

Specifically, we demand that you, other members of your agency, and relevant third parties known to you and your agency, maintain and preserve and thus not destroy, modify, alter, repair, or change in any manner the following information:

1. All video from each Mobile Police Department vehicle that was on the scene where the shooting of Michael Moore occurred;

Letter Re: Preservation of Evidence
Given to Chief James Barber
Chief of Mobile Police Department
6/20/2016
Page 2

2. All audio recordings from each Mobile Police officer that captured events at the scene where the shooting of Michael Moore occurred;

3. All audio recording related to the subject incident;

4. All audio recording of the two passengers of the subject vehicle that was stopped by the officer who fatally shot Michael Moore. We believe but are not sure that one passenger's name is Robert and the other passenger's name is Mark Amos;

5. All video from the University of South Alabama Hospital (USA) cameras that captured Mobile Police officers entering the hospital while Michael Moore was at that hospital. In this respect, we are demanding that you immediately contact USA and preserve all requested video footage, including video footage that captures the entries to the emergency room, the main entrance, the camera located on the cornet of Stanton and Wagner. I will eventually subpoena the serial numbers and sales records of these cameras as well as the footage from them;

6. All incident reports including supplemental reports regarding the subject shooting;

7. All investigative reports and files, including reports and files obtained from other law enforcement agencies related to the subject shooting;

8. The entire personnel filed of the officer, Harold "Harry" Hurst, who shot Michael Moore;

9. All files regarding Harold Hurst including any files kept by the Chief or other personnel of Mobile Police Department;

10. All pre-employment exams of Officer Harold Hurst, including the entire background investigation file; his psychological assessment; his pre poly graph questionnaire; and his poly-graph exam;

11. All documents that demonstrate your agency sought background information from Harold Hurst former employers;

12. All policies, procedures, orders, general orders, rules, regulations and other documents that were effective at the time of the subject shooting regarding the use of deadly force; use of force; traffic stops; emergency care protocol for a person shot.

13. All 911 audio regarding this incident;

14. All radio communication regarding this incident;

Letter Re: Preservation of Evidence
Given to Chief James Barber
Chief of Mobile Police Department
6/20/2016
Page 3

15. All dash cam video from each car that was at the scene of the subject incident;

16. All training profiles;

17. All training manuals that were used to train Harold Hurst;

18. All training video that officer Hurst has viewed in the area of use of deadly force, use of force, and traffic stops;

19. All training exams taken by Harold Hurst;

20. All complaints made by citizens against Harold Hurst;

21. All complaints made by employees of Mobile Police department against Harold Hurst;

22. All data that demonstrates the manner in which Harold Hurst and other Mobile officers receiving training updates;

23. All data that demonstrates the manner in which Harold Hurst and other Mobile officers receiving notifications from Mobile Police Department;

24. All city council meeting regarding the subject shooting;

25. All request for an attorney opinion, including any request to your city attorney, regarding the subject shooting;

26. All video of council meetings in which any matter related to the subject meeting occurred;

27. All documents that demonstrate the a special session occurred regarding the subject shooting;

28. All documents that demonstrate that a closed meeting (not open to the public) occurred regarding the subject shooting;

29. All letters received by the City regarding the subject shooting; and

30. All documents that demonstrate the hiring process that applied to hiring Harold Hurst as a Mobile Police officer.

This list is not exhaustive. As stated earlier: preserve all information related to the subject shooting.

Letter Re: Preservation of Evidence
Given to Chief James Barber
Chief of Mobile Police Department
6/20/2016
Page 4

As you know, failure to preserve evidence can create a presumption that the destroyed evidence favored the claims that the Estate of Michael Moore is going to make against members of your agency. Govern yourself accordingly.

Please contact me if you have any confusion related to any part of this letter. Failure to contact me—within in 7 days of June 20, 2016—about any confusion related to this letter will be deemed an admission that all relevant persons fully understand the requests made herein.

I wish you and your agency the best.

                              Sincerely,

                              s/**MARIO WILLIAMS**

                              MARIO WILLIAMS

# Instructions

**Electronic Documents**

**Image File Format:** All images, paper documents scanned to images, or rendered ESI should be produced as 300 dpi single page Tagged Image File Format (TIFF) files. They should be uniquely and sequentially bates numbered with an endorsement on each page. All MS Excel files and exception documents should be produced in their native format along with a placeholder referencing the documents bates.

**Image Cross Reference File:** Images should be accompanied by a cross reference file that associates each bates number with a corresponding single-page TIFF image file. The file extension for this cross reference should be .OPT.

**Relativity Load File:** Images should also be accompanied by a "text load file" (DAT file).

- DAT file should be in an ASCII text delimited file using the following delimiters:

    ASCII:020 for Column
    ASCII:254 for Quote
    ASCII:174 for Newline

- The text file should contain hyperlinks to applicable native files (mentioned above). There should be one line for every document in the production and it must contain a field listing of the metadata fields in the order they appear within the data file.
- The path to the extracted text/OCR text for each document should also be included in the DAT file. Each document should be as a separate single text file named matching the PRODBEGDOC.

**Hard Copy Documents**

- All hard copy documents should reflect accurate document unitization including attachments and container information using the ParentID, AttachID, ProdBegAttach and ProdEndAttach fields.
- All hard copy documents should be produced in black and white TIFF format unless the image requires color. Images requiring color shall be produced as color 300 dpi single-page JPEG files.

**Required Metadata/Database Fields**

| Field Name | Field Description | Field Type | Field Value | Hard Copy | eDocs and Emails |
|---|---|---|---|---|---|
| DOCID | Starting Bates (including prefix) | Text | 255 | X | X |

| Field Name | Field Description | Field Type | Field Value | Hard Copy | eDocs and Emails |
|---|---|---|---|---|---|
| ProdBegDoc | Starting Bates (including prefix) | Text | 255 | X | X |
| ProdEndDoc | Ending Bates (including prefix) | Text | 255 | X | X |
| ProdBegAttach | Starting Bates number of first attachment (including prefix) | Text | 255 | X | X |
| ProdEndAttach | Ending Bates number of last attachment (including prefix) | Text | 255 | X | X |
| GroupID | Unique number assigned to all members of a family for EVERY document | Text | 255 | X | X |
| ParentID | Parent's starting Bates – populated for all children documents | Text | 255 | X | X |
| AttachID | Child document list – populated for all parent documents | Text | 255 | X | X |
| Custodian | Custodian or Source formatted Last, First or ABC Company | Long Text | Unlimited | X | X |
| Organization | Company or Organization submitting data | Long Text | Unlimited | X | X |
| PageCount | Page Count | Whole Number | 10 | X | X |
| FileName | Name of the file as it appeared in its original location | Long Text | Unlimited |  | X |
| FileSize | File Size in bytes | Integer | 10 | X | X |
| FileExtension | Extension for the file (i.e. .doc; .pdf) | Text | 10 |  | X |
| Source | Document's original source – full folder path | Long Text | Unlimited |  | X |
| Email_To | Recipient formatted Last Name, First Name | Multiple Choice | Unlimited |  | X |
| Email_From | Author of email formatted Last Name, First Name | Single Choice | Unlimited |  | X |
| Email_CC | Carbon Copy Recipients - formatted Last Name, First Name | Multiple Choice | Unlimited |  | X |
| Email_BCC | Blind Carbon Copy Recipients - formatted Last Name, First Name | Multiple Choice | Unlimited |  | X |

| Field Name | Field Description | Field Type | Field Value | Hard Copy | eDocs and Emails |
|---|---|---|---|---|---|
| DocDate | Document Date for eDocs formatted MM/DD/YYYY | Date | MM/DD/YYYY | | X |
| DateSent | Date Email was sent formatted MM/DD/YYYY | Date | MM/DD/YYYY | | X |
| TimeSent | Time Email was sent formatted MM/DD/YYYY | Text | 10 | | X |
| Date Received | Date Email was received formatted MM/DD/YYYY | Date | MM/DD/YYYY | | X |
| TimeReceived | Time Email was received formatted MM/DD/YYYY | Text | 10 | | X |
| DateCreated | Date created formatted MM/DD/YYYY | Date | MM/DD/YYYY | | X |
| DateLastMod | Date Last Modified formatted MM/DD/YYYY | Date | MM/DD/YYYY | | X |
| RecordType | eDoc, Email, Attachment or Hard Copy | Text | 60 | | X |
| NativeLink | Current File Path location to the Native File | Long Text | Unlimited | | X |
| TextLink | Current File Path location to the .txt File | Long Text | Unlimited | X | X |

Alabama

ADVERTISING

# Mobile chief disciplines officers, says falsified cases could number in thousands



By **John Sharp | jsharp@al.com**
**Email the author** | **Follow on Twitter**
on December 12, 2013 at 6:12 PM, updated January 22, 2014 at 7:18 PM

**MOBILE, Alabama** – Four Mobile police officials were demoted and suspended this week for their involvement in what new Chief James Barber calls a "systemic misconduct" of reporting burglary-related crimes within the First Precinct.

The suspensions and charges resulted from a series of disciplinary hearings before a trial board of high-ranking police officers that took place from Nov. 22 to Dec. 9.

Capt. Eddie Patrick was relieved Thursday morning of his command duties, was demoted from captain to lieutenant and was suspended 200 consecutive hours for conduct unbecoming, failure to supervise and failure to obey a direct order. He was transferred to work in the department's support services.

Patrick, as captain, was not terminated from the department because "there was no indication he was making" the false entries himself, Barber said.

"But he was responsible for ensuring the accuracy of those reports submitted to him and given to him on a daily basis," Barber said during a news conference at police headquarters Thursday. "It was a unanimous decision by the trial board that a demotion was in order."

Others disciplined included: Officer Scott Davis, who was in general investigation detail, was suspended 240 consecutive working hours for conduct unbecoming and submitting false entries; Cpl. Damian Colvin, also in general investigation detail, was suspended 120 hours for conduct unbecoming and submitting false entries; and Sgt. Joe Wolfe, supervisor of general

investigation detail, who was demoted to corporal and suspended 160 consecutive hours for failure to supervise and submitting false entries.

Two unnamed officers, who were initially charged in the investigation, were found not guilty. Officer Anthony Sanchez, who was also involved in the misreporting, resigned in June.

Mobile Mayor Sandy Stimpson has been briefed on the disciplinary matters. As mayor, he has the final say on punishment and has "concurred" with the trial board's findings, Barber said.

"This is an example of systematic misconduct," Barber said. "You have almost an entire unit that is under direct supervision of a captain that, almost to a man, was committing the same act. It's pretty telling of an environment that allows it to happen."

The disciplinary action comes after an internal investigation, which was completed in early November, identified 85 reports of either burglary or burglary-related offenses downgraded to a lesser crime of criminal mischief, misconduct or theft. The incidences were concentrated within the First Precinct, and did not involve any other officer or unit within the department, Barber said.

The examination consisted of reporting from January to June.

The chief said there could be more incidences -- possibly "hundreds if not thousands" of reports -- and requested that the public come forward if they feel their cases were not handled properly. Lt. Roy Hodge, a 30-year veteran of the department, has been installed as the interim captain of the precinct.

"We are rebuilding this," Barber said about the handling of cases and crime reporting within the precinct. "There is a new supervisor going over it. They will be contacting the victims in these 85 cases."

He added, "At some point you have to stop and move forward. But we'd certainly like to hear from people who feel their cases were not handled properly. We'd like to hear from them."

The misreporting of burglary cases first surfaced in June after former Police Chief Micheal Williams told the Mobile City Council that an **initial investigation unveiled seven burglary reports** that were misclassified to criminal mischief. He authorized an internal probe to handle the matter.

But the issue blew up during last summer's mayoral campaign after then-challenger Stimpson called on incumbent Mayor Sam Jones to authorize an external audit of the department's crime reporting. **Stimpson also called on Williams to complete the investigation** before the Aug. 27 election date.

That didn't happen, but **Williams announced before his retirement in October that there were 108 reports of property crimes that were misclassified.**

# "It's pretty telling of an environment that allows it to happen." - Police Chief James Barber

Barber said it would only be "speculation" on his part on whether the timing of the investigation's completion was political, saying he wasn't chief at the time and was unaware of where the probe stood.

Barber also declined to say why the misreporting took place, adding that the officers can appeal their suspension to the Mobile County Personnel Board. The suspensions are in effect early next month, but it's unclear whether they will be appealed.

Donald Dees, personnel director with the board, could not be reached for comment.

Barber said he did not believe there was any pressures put on the officers to change the reports, thereby making the city's crime statistics appear more favorable. **Two officers interviewed by AL.com last summer** said that officers have approached them to complain that they felt pressured to reduce charges on incident reports whenever possible.

"There is no pressure to change reports, I can assure you of that," Barber said. "That's not what was occurring here. This was no effort to address crime. This was an effort to conceal the existence of crime."

Patrick became the second captain in as many days to be publicly denounced by the new chief, who said he wants to move the department forward.

**Capt. Carla Longmire of the Third Precinct faces disciplinary action on Monday** before a panel of officers for alleged sexual conduct while on the job with Officer Bradley Lathan. Longmire is charged with unbecoming conduct and failure to supervise and Lathan was charged with unbecoming conduct, untruthfulness during an investigation and disobedience of orders. Both remain on duty.

The city currently has 10 captains.

"I can't even put into words for you to say how disappointed I am to discuss the internal disciplinary matters of the Police Department," Barber said. "It's a very distracting thing for me to have to deal with this at a time when we are trying to push the department in a new direction."

He added, "It's very necessary any systematic misconduct in this organization is dealt with strictly and properly. Would I rather be talking to you about the successes we are having? Sure. I would tell you that 99 percent of the officers out there are doing a fantastic job each day. They answer 22,000 calls for service a year and I'm very proud of them. I do this so they do not have an organization in which this type of activity is allowed to happen."

Registration on or use of this site constitutes acceptance of our **User Agreement** and **Privacy Policy**

© 2017 Alabama Media Group. All rights reserved (**About Us**).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Alabama Media Group.

**Community Rules** apply to all content you upload or otherwise submit to this site.

▷ Ad Choices