Exhibit 3

## Incident Report for run 6/16/16

### Biggs, Charles D
Thu 6/16/2016 6:12 PM

**To:** King, Myron E <kingm@cityofmobile.org>

We were dispatched for one shot. Responded from the station. R14 out of station when responding. Advised by dispatch that MPD was on scene and scene was secure. Arrived on scene to find R14 crew lifting pt from ground to stretcher. Noted handcuff hanging from wrist of pt. Loaded pt into truck and transported to USAMC. CPR was initiated. Tubed and IO placed. Rapid assessment found three GSW's. One in upper left chest, one in left abdomen, and one in right pelvic area. Care turned over to USAMC staff in trauma room. At no time was a weapon seen during the treatment and transport of the pt.

Capt CD Biggs

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**                                    COM 007295

## Gunshot incident report for 06/13/2016

Grizzle, Sean

Thu 6/16/2016 6:19 PM

**To:** King, Myron E <kingm@cityofmobile.org>; Biggs, Charles D <charles.biggs@cityofmobile.org>

R14 RESPONDED EMERGENTLY TO A REPORT OF GUNSHOT AT THE CORNER OF WAGNER AND STANTON ROAD.  RESPONDED FROM SPRINGHILL ROAD IN FRONT OF MIMC.  ARRIVED ON SCENE TO FIND SCENE HAS BEEN SECURED AND QUARANTINED OFF BY MPD.  MPD GRANTED US ACCESS TO THE SCENE. THERE WAS A CROWD OF PEOPLE ON THE LEFT SIDE OF WAGNER IN SEVERAL OF THE FRONT YARDS ON THAT SIDE.  UPON ARRIVAL, MY PARTNER ON R14 WENT STRAIGHT TO THE PATIENT, WHILE I RETRIEVED THE STRETCHER AND EQUIPMENT.  THE PATIENT WAS FOUND FACE DOWN, ON THE LEFT CORNER OF THE VEHICLE ON THE DRIVER SIDE.  THE VEHICLE WAS A WHITE SEDAN THAT WAS PARKED HALFWAY IN A DRIVEWAY.  AS I ARRIVED WITH EQUIPMENT, MPD WAS UNLOCKING THE HANDCUFFS ON THE PATIENT TO FACILITATE MOVEMENT OF THE PATIENT.  ONLY 1 HANDCUFF WAS UNLOCKED.  NO INFORMATION WAS GIVEN TO ME REGARDING EVENTS THAT LEAD UP TO THE SHOOTING.  PATIENT IS UNRESPONSIVE. NO INFORMATION IS KNOWN ABOUT THE PATIENT AT THIS TIME.  ENGINE 14 ARRIVED SHORTLY AFTER R14 ON SCENE.  NO WEAPONS OF ANY KIND WERE VISIBLE/FOUND WHILE THE PATIENT WAS LYING PRONE AND NO WEAPONS WERE VISIBLE/FOUND WHEN THE PATIENT WAS ROLLED INTO A SUPINE FOR MOVEMENT TO THE STRETCHER.  WE PROCEEDED TO LOAD UP THE PATIENT INTO R14 WITH THE ASSISTANCE OF CREW FROM E14.  PATIENT WAS SECURED FOR TRANSPORT.  SEVERAL OF E14 CREW RODE IN WITH R14 TO ASSIST WITH PATIENT CARE.  GUNSHOT WOUNDS WERE FOUND IN THE LEFT CHEST AND ABDOMEN, AND RIGHT ABDOMEN.  PATIENT WAS TRANSPORTED TO USAMC.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**                                                   COM 007296

Incident report

On June 13, 2016 my self and Shaun Grizzle were assigned to R14. We were on they way to Mobile Infirmary to return a pt's ID that was left in the ambulance on a call earlier in that day we where on Springhill AVE about a 1/4 mile from Stanton Rd. when we were dispatched to one shot. Dispatch advised one shot and the scene was secure R14 responded code 3 from Springhill AVE and infirmary dr. R14 AOSTF large crowed on the side of Stanton Rd. and multiple MPD cars MPD directed R14 to turn on to Wagner St.  I was directed to the PT by MPD while Shaun retrieved the stretcher and equipment from the rescue truck. I made initial pt contact, the pt a young black male lying prone on a drive way near the front right side of a white car with his hands behind his back secured with hand cuffs. I advised MPD to remove the hand cuffs MPD removed the hand cuffs, and advised the pt had no weapon on his person. I did not see any obvious sign of a weapon while the pt was lying in the prone position . I rolled the pt over and began a rapid trauma assessment witch revealed multiple GSW'S. One was to the PT's upper left chest mid-clavicualr about 2" above the nipple line actively bleeding I covered wound the wound with my gloved hand applying pressure second GSW was noted to the right lower abdomen just below the waist line w stomach contents coming from the wound pt was not breathing with no palpable carotid pulse . Shortly after pt contact was made E14 arrived on scene and assisted R14 w loading the pt onto the stretcher for immediate transport. Pt was loaded in the Ambulance and transported to USAMC. Assessment/Interventions/Procedures en-rout to USAMC : A - EENT: NORMOCEPHALIC, ATRAUMATIC. Pupils uncreative fixed 4 mm. AIRWAY PATENT not open on its own . TRACHEA MIDLINE. NO JVD NOTED. Chest: GSW upper left chest mid-clavicualr about 2" above the nipple line ,no palpable carotid pulse . ABDOMEN GSW to LLQ w bleeding, GSW RLQ w abdominal contents coming from wound, no CAPILLARY REFILL . SKIN: INTACT, WARM AND CONSISTENT IN COLOR AND TEMP WITH REST OF THE BODY. I/P: Chest seal placed on chest wound and  CPR 100-120 compressions per min, compression depth 2 in , cardiac monitor w defibrillation pads, EZIO adult blue 25mm L tibia w ext set and flush, ET- Intubation visualization of tube passing through vocal cords. Et-tube 8.0 mm placement 23 cm at the teeth cuff inflated w no leaks Capnography attached good wave form, Bvm attached to capnography and ET-Tube BVM 10 time per min 15 LPM , etco2 obtained, clear breath sounds heard upon auscultation in all 4 quadrants, no sounds noted upon auscultation of the Epigastriaum. Condensation inside et-tube noted Tube secured w adult tube tamer, EPI 1:10,000 1mg x 1 via IO, PT Had no rosc, rhythm PEA no change upon arrival to USAMC. During transport PT clothes were cut for further inspection with the exception of his underwear. Pt was not rolled over on stretcher because CPR was in progress. At no time during contact with this PT was a weapon seen. PT CARE WAS PROPERLY TRANSFERRED TO USAMC ED RN.


Z.B Lavender 15867
RA14, NREMT-P

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

## CALL# 0096

Hamilton, Orie

Thu 6/16/2016 6:14 PM

**To:** King, Myron E <kingm@cityofmobile.org>
**Cc:** Biggs, Charles D <charles.biggs@cityofmobile.org>; Hamilton, Orie <orie.hamilton@cityofmobile.org>

DISPATCHED VIA 911 TO ONE SHOT AT WAGNER ST. AND STANTON RD.

AOSTF RA14 AND MPD WITH A B/M LAYING PRONE. RA14 WAS ROLLING PT OVER AS WE ARRIVED AND ASSISTED RA14 LOAD PT ONTO STRETCHER NOTICING HANDCUFF HANGING FROM WRIST AND INTO THE UNIT. EA14 BEGIN TO ASSIST WITH PT CARE.  I BEGAN TO CUT FRONT OF PT'S SHIRT AND SHORTS LOOKING FOR MORE WOUNDS. 3 GSW WAS FOUND. I APPLIED 4X4'S TO HIS RIGHT ABDOMEN TO CONTROL ABDOMINAL CONTENTS. I ATTACHED AED PADS TO PT AND THEN TOOK OVER CHEST COMPRESSIONS. RA14 ARRIVED AT HOSPITAL AND TRANSFERRED CARE TO USA NOT SEEING ANY KIND OF WEAPON.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**         COM 007298

### 83.1.1   CRIME SCENE RESPONSIBILITIES

I.   GENERAL CRIME SCENE RESPONSIBILITIES

A.   Field Officer:

The field officer assigned to a call has the initial investigative responsibility. Upon arrival, the field officer shall ensure personal safety and render any necessary aid. Once the officer has accomplished this, he shall:

1. Determine the nature and extent of the crime.
2. Obtain necessary information.
3. Recover physical evidence.
4. Advise the field supervisor if a specialized unit response is believed to be needed.
5. If specialized unit response is approved, the field officer shall remain at the scene until the arrival of the specialized unit.

B.   Field Supervisor:

The precinct shift supervisor shall:

1. Respond to the scene when the field officer requests a specialized unit and evaluate the necessity.
2. Make the request for the specialized unit, if determined to be necessary.

C.   Crime Scene Officer:

Crime scene officers shall respond to assist with general crime scene processing when:

1. Requested by the on-scene investigator.
2. Unusual circumstances are present, such as substantial loss, high degree of attention, or other extraordinary factors.
3. The field officer is presented with physical evidence issues beyond the scope of basic physical evidence recovery training.

II.   MAJOR CRIME SCENE RESPONSIBILITIES

A.   Field Officer / First Responder:

The Uniform Services member, who is the first to arrive on the scene of a major crime, shall be responsible for the initial scene security and ensure that the scene remains intact. The officer should note initial observations for his report and for the responding investigators and crime scene officers. While the circumstances of the particular case will naturally govern the actions taken by the officer to protect and preserve the physical evidence, the following are valid guidelines:

1. The first priority for the first responding officer is safety. The officer must ensure that the cause or an effect of the event does not pose a threat to officers, other emergency personnel, or citizens.
2. The secondary priority for the first officer responding to an incident scene is rendering aid to injured persons discovered at the scene of the incident.
3. Once safety is established and aid is rendered, measures necessary to protect the crime scene should be initiated. Such steps may be taken simultaneously with giving aid to injured persons or visually evaluating apparently deceased persons.
4. As they are identified, officers should isolate witnesses and victims to protect their testimonial evidence from contamination.
5. Immediate incident scene protection measures include using yellow crime scene tape to identify an area encompassing the incident area, inside which entry is then restricted. Guards must be posted to guard the scene perimeter and control scene access. A guard at the main access area shall note persons entering the scene and the time they enter. A path should be established for entering the scene that would avoid areas of visible evidence and potential evidence that may be less obvious, such as shoe or tire impressions.
6. Movement of evidence prior to the time it has been fully examined and processed should be avoided whenever possible. However, it may be necessary to move an item to protect it from environmental conditions. Efforts should be made to protect potential physical evidence from smoke, rain, snow, or direct sunlight damage.
7. The first responders should note their observations and actions in an Officer's Statement, in the narrative section of the *Alabama Uniform Incident/Offense Report Supplement*. This completed descriptive narrative shall be turned over to the event investigator.
8. First responders should remain at the scene to brief and assist responding detectives and crime scene officers. The first responders must be detailed in their briefing, to include changes in conditions that they witnessed or that they participated in after their arrival.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

9. The underlying intent of all actions taken to protect the scene of a major crime is to preserve its physical aspects, so that they may be documented in detail by the responding crime scene officer. Thus, the major task of the officers preserving the scene is to prevent certain actions, specifically:
   a. Unnecessary walking about by *anyone* within the scene.
   b. Disturbing dead bodies in any way. (Note: The Medical Examiner has jurisdiction over all dead bodies. Department personnel assist the Medical Examiner on death scenes.)
   c. Moving items or touching surfaces, especially those that may yield latent fingerprints.
   d. Removing any items from the scene without the specific permission of the incident's investigator.

B. Communications:

Upon being notified of a request for an on-scene investigator or support personnel, the dispatcher shall notify the Radio Communications Officer (RCO). Upon notification of a major crime scene the RCO shall:

1. Send an "alert" to designated personnel with the known details of the event, via email or text.
2. During normal working hours, notify the supervisor of the affected investigative detail.
3. During other hours, notify the on-call investigator.
4. Notify additional support personnel as requested by the responding investigator.

C. Field Supervisor:

The first line supervisor shall be notified of major crimes reported in his assigned precinct. This supervisor shall immediately respond to the scene and supervise the activities of field officers. This supervisor also shall:

1. Evaluate the scene and ensure that proper personnel have been notified.
2. Evaluate the scene perimeter and expand, if appropriate.
3. Ensure scene security by assigning additional personnel to secure the perimeter, if such action is needed to keep unauthorized personnel out.
4. Ensure that all witnesses are separated and secured in a safe area near the scene. The supervisor shall also ensure that investigators are advised immediately upon their arrival of the witnesses and their locations.

D. Primary Investigator:

The primary investigator has the overall responsibility for the investigation of major crimes and shall organize and direct all associated activities. All decisions regarding the activity at the scene shall be the responsibility of the primary investigator. All personnel directly and indirectly involved with the examination of a crime scene and the evidence collection shall be under the direction of the primary investigator. Upon arrival, the primary investigator shall:

1. Receive a briefing of the circumstances from on-scene personnel.
2. Determine from the field supervisor that the scene is intact and secure from unauthorized persons.
3. Determine the location of all victims, suspects, and witnesses.
4. Ensure that search warrants are obtained, when required.
5. Ensure that all internal and external resources required for the most efficient and effective scene processing are summoned.
6. Ensure the timely interview of all victims, witnesses, and suspects.
7. Receive all the necessary paperwork from all affected personnel.
8. Determine when to release the scene.

E. Crime Scene Officers:

Crime scene officers are personnel specially trained in multiple aspects of physical evidence recovery and processing and are assigned to the Identification Unit. Methods and practices of evidence collection and processing used by crime scene officers shall be in accordance to the rules of evidence and professional standards.

III. CRIME SCENE OFFICER AVAILABILITY

An immediate response of crime scene specialists may often be required for an investigation process to flow properly.

Regular duty times for crime scene officers are day and evening shifts, seven days a week. Crime scene officers are available for calls for the remaining hours, according to a schedule produced by the Identification Unit Commander and maintained by the RCO.

During regular duty hours, the Identification Unit supervisor, or ranking officer, shall be notified of response need and assign a crimes scene officer. During non-duty hours, the RCO shall directly contact the on-call crime scene officer(s) to respond.

Crime scene officers will arrive on the scene of call-outs within an hour of notification, and all members are subject to recall to duty at any time to meet Departmental personnel requirements for unusual occurrences, such as events resulting in multiple deaths.

The criteria for calling out a crime scene officer shall include:

1. Any homicide, probable homicide, or serious assault.
2. Any other major crime, as requested by the investigating detective.
3. Officer-involved or *in-custody events resulting in serious physical injury to anyone or substantial property damage.
4. Any fatal or probably-fatal event, including traffic *collisions.
5. Any time requested by *an on-scene shift commander or *investigative supervisor.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

### 83.1.1   CRIME SCENE RESPONSIBILITIES

I.   GENERAL CRIME SCENE RESPONSIBILITIES

   A. Field Officer:

   The field officer assigned to a call has the initial investigative responsibility. Upon arrival, the field officer shall ensure personal safety and render any necessary aid. Once the officer has accomplished this, he shall:

   1. Determine the nature and extent of the crime.
   2. Obtain necessary information.
   3. Recover physical evidence.
   4. Advise the field supervisor if a specialized unit response is believed to be needed.
   5. If specialized unit response is approved, the field officer shall remain at the scene until the arrival of the specialized unit.

   B. Field Supervisor:

   The precinct shift supervisor shall:

   1. Respond to the scene when the field officer requests a specialized unit and evaluate the necessity.
   2. Make the request for the specialized unit, if determined to be necessary.

   C. Crime Scene Officer:

   Crime scene officers shall respond to assist with general crime scene processing when:

   1. Requested by the on-scene investigator.
   2. Unusual circumstances are present, such as substantial loss, high degree of attention, or other extraordinary factors.
   3. The field officer is presented with physical evidence issues beyond the scope of basic physical evidence recovery training.

II.   MAJOR CRIME SCENE RESPONSIBILITIES

   A. Field Officer / First Responder:

   The Uniform Services member, who is the first to arrive on the scene of a major crime, shall be responsible for the initial scene security and ensure that the scene remains intact. The officer should note initial observations for his report and for the responding investigators and crime scene officers. While the circumstances of the particular case will naturally govern the actions taken by the officer to protect and preserve the physical evidence, the following are valid guidelines:

   1. The first priority for the first responding officer is safety. The officer must ensure that the cause or an effect of the event does not pose a threat to officers, other emergency personnel, or citizens.
   2. The secondary priority for the first officer responding to an incident scene is

rendering aid to injured persons discovered at the scene of the incident.

3. Once safety is established and aid is rendered, measures necessary to protect the crime scene should be initiated. Such steps may be taken simultaneously with giving aid to injured persons or visually evaluating apparently deceased persons.

4. As they are identified, officers should isolate witnesses and victims to protect their testimonial evidence from contamination.

5. Immediate incident scene protection measures include using yellow crime scene tape to identify an area encompassing the incident area, inside which entry is then restricted. Guards must be posted to guard the scene perimeter and control scene access. A guard at the main access area shall note persons entering the scene and the time they enter *on a Crime Scene Log form (PD-53)*. A path should be established for entering the scene that would avoid areas of visible evidence and potential evidence that may be less obvious, such as shoe or tire impressions.

6. Movement of evidence prior to the time it has been fully examined and processed should be avoided whenever possible. However, it may be necessary to move an item to protect it from environmental conditions. Efforts should be made to protect potential physical evidence from smoke, rain, snow, or direct sunlight damage.

7. The first responders should note their observations and actions in an Officer's Statement, in the narrative section of the Alabama Uniform Incident/Offense Report Supplement. This completed descriptive narrative shall be turned over to the event investigator.

8. First responders should remain at the scene to brief and assist responding detectives and crime scene officers. The first responders must be detailed in their briefing, to include changes in conditions that they witnessed or that they participated in after their arrival.

9. The underlying intent of all actions taken to protect the scene of a major crime is to preserve its physical aspects, so that they may be documented in detail by the responding crime scene officer. Thus, the major task of the officers preserving the scene is to prevent certain actions, specifically:

   a. Unnecessary walking about by anyone within the scene.
   b. Disturbing dead bodies in any way. (Note: The Medical Examiner has jurisdiction over all dead bodies. Department personnel assist the Medical Examiner on death scenes.)
   c. Moving items or touching surfaces, especially those that may yield latent fingerprints.
   d. Removing any items from the scene without the specific permission of the incident's investigator.

B. Communications:

Upon being notified of a request for an on-scene investigator or support personnel, the dispatcher shall notify the Radio Communications Officer (RCO). Upon notification of a major crime scene the RCO shall:

1. Send an "alert" to designated personnel with the known details of the event, via email or text.
2. During normal working hours, notify the supervisor of the affected

investigative detail.

3. During other hours, notify the on-call investigator.
4. Notify additional support personnel as requested by the responding investigator.

C. Field Supervisor:

The first line supervisor shall be notified of major crimes reported in his assigned precinct. This supervisor shall immediately respond to the scene and supervise the activities of field officers. This supervisor also shall:

1. Evaluate the scene and ensure that proper personnel have been notified.
2. Evaluate the scene perimeter and expand, if appropriate.
3. Ensure scene security by assigning additional personnel to secure the perimeter, if such action is needed to keep unauthorized personnel out.
4. Ensure that all witnesses are separated and secured in a safe area near the scene. The supervisor shall also ensure that investigators are advised immediately upon their arrival of the witnesses and their locations.

D. Primary Investigator:

The primary investigator has the overall responsibility for the investigation of major crimes and shall organize and direct all associated activities. All decisions regarding the activity at the scene shall be the responsibility of the primary investigator. All personnel directly and indirectly involved with the examination of a crime scene and the evidence collection shall be under the direction of the primary investigator. Upon arrival, the primary investigator shall:

1. Receive a briefing of the circumstances from on-scene personnel.
2. Determine from the field supervisor that the scene is intact and secure from unauthorized persons.
3. Determine the location of all victims, suspects, and witnesses.
4. Ensure that search warrants are obtained, when required.
5. Ensure that all internal and external resources required for the most efficient and effective scene processing are summoned.
6. Ensure the timely interview of all victims, witnesses, and suspects.
7. Receive all the necessary paperwork from all affected personnel.
8. Determine when to release the scene.

E. Crime Scene Officers:

Crime scene officers are personnel specially trained in multiple aspects of physical evidence recovery and processing and are assigned to the Identification Unit. Methods and practices of evidence collection and processing used by crime scene officers shall be in accordance with the rules of evidence and professional standards.

III.   CRIME SCENE OFFICER AVAILABILITY

An immediate response of crime scene specialists may often be required for an investigation process to flow properly.

Regular duty times for crime scene officers are day and evening shifts, seven days a week. Crime scene

officers are available for calls for the remaining hours, according to a schedule produced by the Identification Unit Commander and maintained by the RCO.

During regular duty hours, the Identification Unit supervisor, or ranking officer, shall be notified of response need and assign a crimes scene officer. During non-duty hours, the RCO shall directly contact the on-call crime scene officer(s) to respond.

Crime scene officers will arrive on the scene of call- outs within an hour of notification, and all members are subject to recall to duty at any time to meet Departmental personnel requirements for unusual occurrences, such as events resulting in multiple deaths.

The criteria for calling out a crime scene officer shall include:

1. Any homicide, probable homicide, or serious assault.
2. Any other major crime, as requested by the investigating detective.
3. Officer-involved or in-custody events resulting in serious physical injury to anyone or substantial property damage.
4. Any fatal or probably-fatal event, including traffic collisions.
5. Any time requested by an on-scene shift commander or investigative supervisor.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**

| MO-2005-02 |
|---|

Mobile Police Department                              November 17, 2005

---

**SUBJECT:**   PERSONNEL EARLY WARNING SYSTEM

**TO:**        All Personnel

**PURPOSE:**   To establish procedures for the early identification of problem employees

---

### General Concept

A comprehensive Personnel Early Warning System is an essential component of good discipline in a well-managed law enforcement agency. The early identification of potential problem employees and a list of options for remedial actions can increase accountability and offer employees a better opportunity to meet our values and mission statements.

The Personnel Early Warning System will be initiated when certain types of incidents occur and there will be an evaluation of collected material. Such material may include, but not necessarily be limited to, performance evaluations, citizen complaints, disciplinary actions, use of force incidents, internal affairs, supervisory and employee reports such as workmen's compensation claims and traffic accidents.

As administrators, we should not be faced with investigating an employee for a serious case of misconduct only to find there was an escalating pattern of less serious misconduct, which could have been abated through intervention. Our failure to develop and maintain a comprehensive Personnel Early Warning System can lead to the erosion of public confidence in our ability to investigate ourselves, while putting the public and agency employees in greater risk of danger.

The Personnel Early Warning System includes options and reviews already available and described in the Department's General Orders, specifically, Chapter 1, Use of Force; Chapter 26, Disciplinary System; Chapter 22, Employee Assistance Program and Personnel Support Services; and Chapter 52, Internal Affairs. The system will be reviewed annually to evaluate its function and that it meets the needs of the Department and its personnel.

Proactive early interventions from the first and second levels of supervision are crucial elements to the success of our Personnel Early Warning System. It is a method to serve our members in a proactive manner rather than reactive, assisting them in maintaining a high level of conduct and performance. Actions taken by supervision are intended to be a positive effort toward this goal.

The Personnel Early Warning System offers a non-disciplinary avenue to address problems and/or deficiencies (if found) as early as possible to change unwanted behavior prior to the employee entering the discipline track, or to work in conjunction with formal discipline.

### Personnel Early Warning System

The Personnel Early Warning System process is dependent upon recognition of program candidates through the following methods:

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**                    COM 007306

➤ Monthly Data scanning by the immediate supervisors - Under this process, employee statistical data, reports and behavioral indicators are reviewed monthly for program analysis referral indicators. Supervisors will prepare documentation and send to the Chief of Police if an employee under their command has been identified.

➤ Supervisory assessment - Any supervisor who identifies negative behavior patterns in an employee should complete a Personnel Early Warning System analysis and forward it through the chain-of-command to the Chief of Police.

**Behavioral Indicators**

The following performance data, although not inclusive, may indicate if an employee is a candidate for the Personnel Early Warning System process:

➤ Indications of substance abuse
➤ Supervisory problems, i.e. previous attempts through performance review and discipline have had little, if any effect on resolving behavior
➤ Unexplained changes or unusual behavior
➤ Significant reduction in work performance
➤ Excessive absenteeism

**Program Referral**

These examples, although not inclusive, require referral to the Personnel Early Warning System process for the completion of an Employee Analysis Report and pre-screening. During the monthly screening, supervisors will review these items and refer anyone for inclusion in the Personnel Early Warning System process. This data is maintained on a database in Internal Affairs and other files, which are available for review, by the staff. The Commander of the Internal Affairs Unit will forward these monthly reviews (both negative and positive) to the accreditation office each month. Listed below are referral criteria:

➤ Three or more Citizen Complaints/Internal Investigations within a twelve month period
➤ Three or more Use-of-Force cases within a twelve-month period
➤ Two or more injuries to prisoners within a twelve-month period
➤ Four or more vehicle pursuits within a twelve-month period
➤ Two or more vehicle accidents within a twelve-month period
➤ Any discernible pattern of repeated similar complaints, regardless of finding, against an employee
➤ Officer found at fault during a complaint of excessive use-of-force
➤ Evidence of substance abuse (i.e. odor of alcohol, sudden change in behavior, etc.)
➤ Supervisor referral through the chain-of-command with final approval from the Chief of Police

**Employee Analysis Report**

When an employee has been identified through the Personnel Early Warning System process, a report will be completed. The referring supervisor will prepare the report.
The report will include a brief profile of data/information that is the basis for the referral. This includes things like complaints, use of force cases, pursuits and patrol car crashes, previous

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**                    COM 007307

attempts at counseling or previous Personnel Early Warning System referrals, disciplinary problems and any other data that will be useful in looking at the total picture of the employee. This includes shift, length of service, past training if necessary, and current and past assignments. The supervisor, and his chain-of-command, will develop a plan of action to address and correct the problem.

Upon completion of the report the supervisor will forward the report through the chain-of-command to the Chief of Police. The Chief of Police will review the report and plan of action and will determine whether intervention is warranted. If intervention is warranted, the Chief of Police will direct that the plan of action be put in effect. If no intervention is necessary, the report is filed in the Internal Affair Unit and no further action is taken.

**Plan of Action**

The plan of action should be flexible enough to permit modification if necessary. Significant progress may dictate modification of the plan while continued problems may require additional measures to be implemented.

The plan of action may include but is not limited to:

> - A synopsis of the behaviors identified that are adversely affecting the performance of the member.
> - Specific actions required of the employee, the employee's supervisor, or other parties involved.
> - Notice that participation by the involved officer is mandatory. This program will not mitigate any other disciplinary action resulting from the employee's employment (i.e. future complaints or internal investigations). Should further undesirable behavior occur during the program, necessary disciplinary action may be taken.

Recommendations stemming from the plan of action may include but are not limited to the following:

> - Retraining the employee in the affected area of concern or unacceptable behavior
> - Referral to a Department designated psychologist
> - Assignment to a support group (peer or otherwise depending on the situation)
> - Voluntary referral to the Employee Assistance Program agencies
> - Require additional training for the employee

Copies of the plan of action will be sent to the employee and placed in the employee's personnel file. The supervisor will review and discuss the plan of action with the employee.

By order of:

*Samuel M. Cochran*

Samuel M. Cochran
Chief of Police

MO-2005-02                   November 17, 2005                   Page 3 of 3

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**                   COM 007308

| MO-2014-02 |
|---|

Mobile Police Department                                          May 29, 2014

**SUBJECT:** Employee Intervention Program (Rescinds MO-2005-02)

**TO:**          All Personnel

**PURPOSE:** The purpose of this order is to outline and identify the procedures to be used to identify potential personnel problems in their initial stages in order to redirect an employee's actions / behavior in a fashion consistent with departmental values and standards.

## I. POLICY

It is the policy of the Mobile Police Department to maintain an Employee Intervention Program to provide systematic reviews of specific, significant events involving agency employees. This program is necessary for the Department to exercise its responsibility to evaluate, identify, and assist employees who exhibit signs of performance and/or stress related problems. The system is intended to serve as a systematic approach to highlight tendencies that may otherwise be overlooked.

## II. DEFINITIONS

Employee Intervention Program - A system designed to effectively organize critical performance and evaluation data in a format conducive to promptly identify early indicators of certain performance and/or stress related problems and to facilitate any necessary and / or appropriate follow-up actions.

## III. PROCEDURES

　　1) Reporting Requirements

　　　　a) As part of the Department's ongoing evaluation of its employees, supervisors shall continually monitor the actions and behaviors of all employees under their direction. Supervisors are responsible for monitoring and reporting on all aspects of their subordinate's conduct and behavior. These reports shall include conduct that is both commendatory and problematic. All conduct and behavior reports shall be submitted to the Watch Commander or Unit Supervisor of the employee whose actions are being reported.

　　2) Employee Intervention Program Review

　　　　a) An Employee Intervention Program review may be based on a single "significant" event or based on on-going pattern(s) of identified behavior(s).

MO-2014-02                    May 29, 2014                    Page 1 of 5

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                    COM 007309

b) When the level of significance or frequency of identified incidents is determined to be beyond that which is typically observed, the Watch Commander or Unit Supervisor shall initiate an Employee Intervention Program review.

c) The Watch Commander or Unit Supervisor may initiate an Employee Intervention Program review based on a single significant event.

d) The Watch Commander or Unit Supervisor shall initiate an Employee Intervention Program review as directed by the Chief of Police or his designee.

e) An Employee Intervention Program review shall be conducted by the Watch Commander or Unit Supervisor when a subordinate has:

1. Three or more Citizen Complaints / Internal Investigations within any twelve month period

2. Five or more Use-of-Force cases within any twelve-month period

3. Three or more incidents resulting in discipline within any twelve-month period

4. Two or more at fault vehicle accidents within any twelve-month period

5. Four or more incidents resulting in vehicle damage, accidents and / or property damage within any twelve-month period

6. Five or more vehicle pursuits within any twelve-month period

7. Any discernible pattern of repeated similar complaints, regardless of finding, against an employee

8. Officer found at fault during a complaint of excessive use-of-force

9. Evidence of substance abuse (i.e. odor of alcohol, sudden change in behavior, etc.)

10. Evidence of sick leave abuse as outlined in General Order 22, Section V., Sick Leave.

f) Consideration should be given to an employee's assignment when conducting a review. Employees in assignments in Field Operations or Special Operations would typically be involved in more incidents than those in Investigative Operations or Support Services.

3) Materials to be evaluated on an ongoing basis to determine whether to initiate an Employee Intervention Program review include but are not limited to:

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

a) Daily Activities Reports

b) Roll Call Inspections, PD 202

c) Performance Observations, PD 230

d) Supervisory and employee reports

e) Use of Force incidents

f) Motor vehicle pursuits

g) Vehicle accidents

h) First Report of Injury

i) Citizen complaints

j) Administrative and / or Internal Affairs Investigations

k) Disciplinary Actions

4) If the Watch Commander or Unit Supervisor reasonably believes, after examining the collected materials, that a referral to the Employee Intervention Program is required, the Supervisor shall inform the employee's Precinct or Section Commander of the findings.

5) The Precinct or Section Commander shall examine the findings and if in agreement, the Precinct or Section Commander shall assign a supervisor to conduct a formal review.

6) Once assigned, the Reviewing Supervisor shall schedule a counseling meeting with the employee. The Supervisor shall prepare a written report of findings, indicating any adverse behavior identified, any suspected causes of adverse behavior, and any corrective actions deemed necessary.

a) The summary shall include at a minimum:

i) A synopsis of the behaviors identified that are adversely affecting the performance of the member.

ii) A recommendation as to whether enrollment in the Employee Intervention Program is warranted or not.

iii) If enrollment is warranted, a specific plan of actions required of the employee, the employee's supervisor, or other parties involved.

MO-2014-02                    May 29, 2014                    Page 3 of 5

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                    COM 007311

b) The report of findings shall be in memorandum format and will be forwarded to the Chief of Police, or his designee, through the chain of command for Command Review and endorsement.

7) If deemed necessary by the Chief of Police, or his designee, a meeting shall be scheduled with the Chief of Police, or his designee, and the employee's chain of command to discuss the findings of the review and the recommended course of corrective action.

8) The Chief of Police, or his designee, shall direct the employee be enrolled in the Employee Intervention Program.

a) A supervisor shall be assigned to monitor the employee's compliance with the plan of action.

b) The assigned supervisor will counsel the employee on the plan of action and complete a counseling statement on a Performance Observation (PD 230). At a minimum this counseling will include:

i) The behavior or actions to be amended and / or corrected

ii) The expected standards and actions of the plan of action

iii) The desired end state of the plan of action, i.e. what must be accomplished for the employee to be removed from the program

iv) That the plan of action constitutes a lawful order and failure to comply with the guidance and requirements of the plan of action could result in disciplinary action under General Order 26, section 17.01 - Disobedience of Orders.

c) The assigned supervisor shall complete written monthly reviews of the employee and submit these through the chain of command to the Internal Affairs Unit.

d) The Internal Affairs Unit shall manage the Employee Intervention Program.

9) Enrollment in the Employee Intervention Program may be voluntary, for example the employee seeking assistance through the Employee Assistance Program, or department mandated.

10) This program will not mitigate any other disciplinary action resulting from the employee's employment (i.e. future complaints or internal investigations). Should further undesirable behavior occur during the program, necessary disciplinary action may be taken.

11) All reviews shall be maintained in the strictest confidence and shall not be discussed with other employees unless it is necessary for completion of the review. All

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

COM 007312

employees made aware of a review shall be informed that unauthorized disclosure of any aspect of the review may result in disciplinary action.

12) All Employee Intervention Program documentation shall be sent to the Internal Affairs Unit and maintained in the employee's personnel file.

## IV. REMOVAL FROM THE EMPLOYEE INTERVENTION PROGRAM

1) Upon completion of the requirements set forth in the approved Employee Intervention Program plan of action, the employee's immediate supervisor shall evaluate the employee.

2) The supervisor shall prepare a written summary of the progress of the employee and the effectiveness of the plan of action.

a) The supervisor shall recommend removal from the program or additional actions required to continue the employee's progress.

3) The summary shall be forwarded to the Chief of Police, or his designee, through the chain of command for Command Review and endorsement.

## V. EVALUATION OF THE EMPLOYEE INTERVENTION PROGRAM

1) Annually, the Commander of Internal Affairs shall evaluate the Employee Intervention Program. This evaluation shall include:

a) Quality of information entered into the system

b) Proper utilization of the system

c) Adherence to department policy

d) Recommendations of changes to the system, its usage, or department policy.

2) The evaluation shall be inclusive of December through November and be completed by the end of the first quarter of each calendar year for approval by the Chief of Police.

3) The Internal Affairs Unit shall maintain and control all records of completed Employee Intervention Program reviews.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                         COM 007313

### 70.3.1   SICK, INJURED, AND DISABLED PRISONERS

If a prisoner becomes sick or is injured incidental to arrest, if at all possible, the arresting officer should immediately seek medical attention for the prisoner.

Physically and mentally disabled prisoners present conditions that dictate special care and attention. For example, the type of vehicle used would be a consideration when transporting non-ambulatory prisoners or those requiring wheelchairs, crutches, or prosthetic appliances. It may be necessary to transport medicine, insulin, and other special items for certain prisoners during transport. The safety of the prisoner and the transporting officer requires due care when transporting disabled prisoners.

If a prisoner is handicapped to an extent that the officer feels the prisoner cannot be safely transported in a police vehicle, the officer will contact the shift supervisor to coordinate one of the following:  The prisoner will, if possible, be processed and released in the field, if a full booking procedure is not absolutely necessary; or, the prisoner may be transported to a booking or holding facility by ambulance.  Any prisoner in custody for a criminal offense who is transported in an ambulance (contract, fire department, or private) must be accompanied in the ambulance by an officer.

Any prisoner complaining of sickness or injury, or in the judgment of the officer appears to be sick or injured whether complaining of same or not, will be treated as follows:  A fire department ambulance will be called to the prisoner's location; based upon the paramedic's recommendation the prisoner will be either administered first aid by the paramedics or transported to the emergency room at an approved medical facility; a written report will be made regarding any medical attention or first aid given to the prisoner, including the dates, times, places, and names of the providers.

A sick or injured prisoner will be transported in a police vehicle only after a fire department paramedic unit has examined the prisoner and consider it safe to do so.  Whether or not the sick or injured prisoner is transported in a police vehicle in restraints is a decision left to the transporting officer.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

O.G. 5607
New: July 2016

## EMS Operating Guidelines for Open Carry and Concealed Weapons

The purpose of this guideline is to provide clear direction to MFRD personnel as it relates to the assessment, treatment and transport of patients with open carry or concealed weapons. Due to the increasing threat of both foreign and domestic terrorism the following steps shall be implemented when encountering every patient:

- ☐ Ask/ensure the patient is not carrying or have on their person a deadly weapon for your personal safety, as well as the safety of your crew.

If it has been determined the patient is in possession of a deadly weapon MFRD personnel are advised to immediately do the following:

- ☐ Advise the Incident Commander and/or Fire Alarm of a Code Whiskey (Whiskey will indicate the patient has a weapon on board)
- ☐ The Incident Commander and/or Fire Alarm will immediately notify Law Enforcement their assistance is needed on scene for an individual with an open carry or concealed weapon.
- ☐ MFRD personnel shall at no time attempt to remove or confiscate the weapon.
- ☐ Upon arrival of Law Enforcement the Law Enforcement Officers shall be notified where the weapon is located and Law Enforcement shall remove the weapon from the patient.
- ☐ If patient transport is advised the patient shall then be transported to the receiving facility with a report given to that facility prior to arrival that the patient was in possession of a deadly weapon that has been secured by Law Enforcement Officers.
- ☐ Law Enforcement Officers may accompany the patient to the receiving facility and transfer the weapon to the receiving facility security staff upon arrival at the facility or confiscate the weapon and secure it until the patient has been released from the medical facility.

If the patient condition dictates immediate transport and law enforcement is not on the scene law enforcement shall be notified of the status and patient destination. The receiving facility shall be notified that the incoming patient has a concealed weapon and all security measures shall be implemented.
Any violation of this O.G. can cause serious detriment to the safety of the MFRD personnel, as well as, the receiving facility staff. Please adhere to the contents of this Operating Guideline.

**CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER**