**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

SHUNTY DAUGHERTY, individually )
and as the administrator of the estate of )
Michael Dashawn Moore, )
                                        )
      Plaintiff, )
                                        )
vs. )       CIVIL ACTION NO. 1:17-cv-72-TFM-C
                                        )
HAROLD HURST, *et al.* )
                                        )
      Defendants. )

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Defendant Harry Hurst's *Motion for Summary Judgment* (Doc. 158, filed October 4, 2019) and Defendant City of Mobile's *Motion for Summary Judgment and Incorporated Memorandum of Law* (Doc. 160, filed October 4, 2019). The motions have been fully briefed and are ripe for review. Having considered the motions and relevant law, the Court finds Defendant Hurst's motion for summary judgment (Doc. 158) is due to be **GRANTED in part** and **DENIED in part** and Defendant City of Mobile's motion for summary judgment (Doc. 160) is due to be **GRANTED**.

### I.    PARTIES, JURISDICTION, AND VENUE

Plaintiff Shunta Daugherty filed her complaint both individually and as the administrator of the estate of Michael Dashawn Moore against Defendants City of Mobile and Harry Hurst[1] in his individual capacity arising from the death of her son during a traffic stop.

The District Court has subject matter jurisdiction over the claims in this action pursuant to

---

[1] The Complaint and Amended Complaint incorrectly identify the defendant as Harold Hurst.

28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff asserts claims pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Procedural Background

On February 9, 2017, Plaintiff Shunta Daugherty ("Plaintiff") filed her original complaint against Defendant Harry Hurst ("Officer Hurst"). *See* Doc. 1. Plaintiff asserted three counts in the original complaint: (1) allegations of a Fourth Amendment violation brought pursuant to 42 U.S.C. § 1983; (2) wrongful death pursuant to Ala. Code. § 6-5-410; and (3) negligence pursuant to Alabama state law. *Id*. Officer Hurst appeared and answered the complaint on April 7, 2017. *See* Doc. 11.

On June 12, 2018, Plaintiff sought to amend her complaint, which the Court granted. *See* Docs. 70, 71. The Amended Complaint was docketed on June 21, 2018. *See* Doc. 74. Plaintiff added as defendants the City of Mobile ("the City") and the University of South Alabama Medical Center ("the Medical Center") and asserts five separate counts as follows: (1) a Fourth Amendment violation brought pursuant to 42 U.S.C. § 1983 against Officer Hurst in his official and individual capacities; (2) wrongful death pursuant to Ala. Code. § 6-5-410 against Officer Hurst in his official and individual capacities; (3) negligence pursuant to Alabama state law against Officer Hurst in his individual capacity; (4) negligent Retention against the City; (5) unskillfulness of Hurst against the City; and (6) spoliation against the Medical Center. *Id*. The City filed its answer on July 27, 2018. *See* Doc. 84. The Medical Center filed a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(1) and 12(b)(6), to which the Plaintiff responded was unopposed. *See* Docs. 89, 90, 99. Consequently, the Medical Center was dismissed as a defendant and Count VI for spoliation was dismissed. *See* Docs. 100, 101. Therefore, the only defendants remaining were Officer Hurst and the City and the only claims remaining were Counts I through V.

After discovery concluded, on October 4, 2019, the City and Officer Hurst filed their respective motions for summary judgment. *See* Docs. 158, 159, 160, 161. Plaintiff timely responded and Defendants timely replied. *See* Docs. 167, 168, 173, 174.

Additionally, in conjunction with the summary judgment briefing, both parties filed certain objections to evidence submitted as well as Defendants' motion filed pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). *See* Docs. 169, 175, 178. The Court previously ruled on those evidentiary motions on September 15, 2020. *See* Docs. 202, 203.

## B.    Factual Background[2]

The case results from the shooting and subsequent death of Michael Dashawn Moore ("Moore") by Officer Hurst. Plaintiff alleges the following facts in her Amended Complaint and response to summary judgment. *See* Docs. 74, 167. Of note, there is no video of the traffic stop or shooting. The only video available is several minutes later from responding officers reporting

---

[2] At the summary judgment stage, even in cases of excessive force, the facts are "what a reasonable jury could find from the evidence viewed in the light most favorable to the non-moving party." *Cantu v. City of Dothan*, --- F.3d ---, ---, 2020 U.S. App. LEXIS 28074, at *4, 2020 WL 5270645, at *2 (11th Cir. Sept. 3, 2020) (quoting *Scott v. United States*, 825 F.3d 1275, 1278 (11th Cir. 2016)). "[W]here there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movant." *Id.* at ---, 2020 U.S. App. LEXIS 28074, at *4-5, 2020 WL 5270645, at *2 (quoting *Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016)). Therefore, the recitation of facts here are those construed in favor of the Plaintiff. "The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts." *Id.*

to the scene.

On June 13, 2016, Moore, went to play basketball at the Springhill Rec Center.  Afterwards, Moore and two friends, Mark Amos ("Amos") and Robert Blackmon ("Blackmon"), rode around the City of Mobile in a white Lexus.  Officer Harry Hurst ("Officer Hurst") was a Mobile Police Department Officer who was on his way into work.  Eventually, Officer Hurst activated his blue lights to initiate a traffic stop of the white Lexus.  The Lexus pulled into the driveway of an office on the south side of Wagner Street.  Officer Hurst pulled up behind the Lexus, got out of the patrol car, and walked up to the Lexus on the passenger side of the vehicle.  Moore was the driver of the vehicle while Amos was in the front passenger seat and Blackmon was in the back seat.  Officer Hurst requested Moore's license and registration, and Moore verbally gave a driver's license number.

Officer Hurst went back to his patrol vehicle.  According to Officer Hurst, at this point, he called police dispatch to provide the location of the traffic stop and the Lexus' tag number.  Officer Hurst heard the dispatcher put out a radio request for an officer to back Hurst up for a possible Code 29.  At this point, Officer Hurst indicates he ran the Lexus tag in the National Crime Information Center ("NCIC"), which indicated a stolen vehicle report submitted by MPD Officer Demetrius Watts.  Officer Hurst also ran the tag number in the Law Enforcement Tactical System ("LETS"), which displayed the photograph of the vehicle's owner, an older white male that clearly was not Moore, a younger black male.  Officer Hurst also said he ran the driver's license number that Moore had recited, and the result displayed a photograph of the holder of the license was another white male (different from the vehicle owner).

Dispatch was having difficulty securing back up for Officer Hurst as the time of day was at shift change and at the end of the business workday.  Officer Hurst then got out of his patrol car,

drew his service weapon, and approached the driver's side of the Lexus.  Officer Hurst then ordered Moore out of the vehicle.

At this stage, the facts become heavily disputed.  Plaintiff alleges Moore stepped out of the vehicle with a cell phone in his hand, moved towards the front of the Lexus, and once there he faced Hurst with his hands raised in the air.  Plaintiff acknowledges that even their witness testimony varies – some witnesses say there was not a gun on Moore while others say a gun was tucked in his shorts, but that he never reached for the weapon.  Some also acknowledge that Moore stepped back as if he stumbled or prepared to run.  Then Officer Hurst shot Moore despite the fact Moore did not reach for a weapon with his hands still in the air.  After Moore fell to the ground, Officer Hurst shot him again.

Officer Hurst tells a very different version of events.  Though the Court must consider the facts in the light most favorable to the Plaintiff, the Court will still articulate Officer Hurst's version of events to provide context for this legal dispute.[3]  Officer Hurst alleges that Moore exited and faced the vehicle with his hands extended above the roof with a cell phone in one hand.  Officer Hurst then ordered him to put his cell phone down.  When Moore bent to put the cell phone down, Officer Hurst noticed Moore had a pistol tucked into his shorts.  Officer Hurst told Moore he saw the gun and directed him not to reach for it.  As Moore straightened up, he paused while his back was to Officer Hurst.  Moore then broke away and spun around rapidly with his hands at chest level.  Officer Hurst says he lost sight of Moore's hand for a moment.  Officer Hurst then saw Moore's right hand move towards his waist.  Officer Hurst fired several shots, and Moore fell backwards.  Officer Hurst shouted for Moore to put his hands behind his head, but Moore did not

_____

[3] Numerous witnesses were in the vicinity and provide varying accounts of the events.  Some favor the Plaintiff's version of events while others favor the Defendants' version.

comply.  Rather, Moore moved his hand towards his waist where Officer Hurst had seen the gun tucked in his shorts.  Officer Hurst believed his life was in danger and fired a final shot.  After the final shot, Officer Hurst trained his service weapon on Amos and Blackmon and ordered them to keep their hands where he could see them.  Officer Hurst then contacted dispatch, repeated his request for backup, and indicated an officer-involved shooting.

Mobile Police officer Ophelia Weathington ("Officer Weathington") responded to the dispatch call for back up for an officer-involved shooting and activated her body camera.  Officer Weathington was the first to arrive on the scene approximately two to three minutes later.  At Officer Hurst's request, she secured Amos and Blackmon by training her service weapon on them and telling them to keep their hands up.  Officer Hurst rolled Moore onto his stomach and handcuffed his hands behind his back.  Officer Hurst, along with Officer Weathington and Officer Deadre Portis (who had just arrived), moved Amos and Blackmon from the Lexus, handcuffed them, and placed them in separate patrol cars.

Officer Hurst searched Moore after he was shot, but did not find a weapon.  On the scene, Officer Hurst told at least two officers that he found a magazine in Moore's pocket, but after one officer pointed out that Officer Hurst appeared to be missing a magazine from his own carrier, he did not mention it again.  Several officers also searched the area and never located a weapon.  At this point, paramedics worked on Moore, placed him on a stretcher, and took him to an ambulance.  Moore was also searched by a paramedic who also did not find a gun.  This search included lifting Moore's shirt and pulling his shorts away from his body as captured by the body-camera video from Officer Portis.  Moore was taken by ambulance to the Medical Center.  In the ambulance, Moore's shirt and shorts were cut by paramedics and still no gun was found.  Once in the hospital, Moore was transferred from the stretcher to a hospital bed.  Numerous doctors, nurses, and other

medical personnel worked on or observed Moore's treatment.  Still no gun was found.

Eventually, after Moore was pronounced dead, a nurse found a firearm after she rolled Moore's body over.  The nurse notified the officer in the room, and the weapon was photographed and recovered.  The gun had little to no blood on it despite a large pool of blood under Moore, and when tested for fingerprints, Moore's fingerprints were not found on the gun or the bullets.

### III.   STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial.  FED. R. CIV. P. 56(a), (b).  Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'").  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co.,* 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).[4]  At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  Only disputes about the material facts will preclude the granting of summary judgment.  *Id.*

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id*. (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356 (citations omitted).  Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990).  "Speculation does not create a *genuine* issue of fact."  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (emphasis in original) (citations omitted).  In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case.  *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."  FED. R. CIV. P. 56(e).

## IV.   DISCUSSION AND ANALYSIS

### A.   Claims against Officer Hurst

Plaintiff asserts three claims against Officer Hurst – Count I: Fourth Amendment violation brought pursuant to 42 U.S.C. § 1983 against Officer Hurst in his official and individual capacities; Count II: wrongful death pursuant to Ala. Code. § 6-5-410 against Officer Hurst in his official and individual capacities; and Count III: negligence pursuant to Alabama state law against Officer

Hurst in his individual capacity.

Officer Hurst asserts qualified immunity as to Count I and state agent immunity as to Counts II and III.

### i.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  To be protected by qualified immunity, the government official must first demonstrate that he was acting within the scope of his discretionary authority. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998).  Next, courts utilize a two-part framework to evaluate qualified immunity claims. *Castle v. Appalachian Tech. College*, 631 F.3d 1194, 1197 (11th Cir. 2011).  The first element is whether the plaintiff's allegations, if true, establish a constitutional violation. *Pearson*, 555 U.S. at 232, 129 S. Ct. at 815-16 (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).  The second element is whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id*. at 232, 129 S. Ct. at 816.  The first inquiry may be a mixed question of law or fact, but the second inquiry is purely a question of law. *Hall v. Flournoy*, --- F.3d ---, ---, 2020 U.S. App. LEXIS 29681, at *11, 2020 WL 5555082, at *4 (11th Cir. Sep. 17, 2020).  "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Pearson*).  If a plaintiff fails to establish either one, then the defendant it entitled to qualified immunity.

Having laid out the framework for analysis, the Court will turn to the situation in this case. Neither party disputes that Officer Hurst was acting in the scope of his discretionary authority. Therefore, the burden shifts to the Plaintiff to establish the two-part framework.

      **(a)**      **The Constitutional Violation**

Plaintiff asserts that Officer Hurst violated Moore's Fourth Amendment right to be free from excessive force by shooting him to death.

The right to be free from unreasonable search and seizure is secured by the Fourth Amendment and "apprehension by the use of deadly force is a seizure." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985). Additionally, under the Fourth Amendment, an officer's use of deadly force must be reasonable. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). An officer may constitutionally use deadly force when the officer:

> (1) "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others" or "that he has committed a crime involving the infliction or threatened infliction of serious physical harm"; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

*Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (quoting *McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009)). Yet even with these elements, the Court must not "apply them mechanically" and "must still slosh our way through the factbound morass of reasonableness." *Id.* (citations and internal quotations omitted). Further, as noted by the Eleventh Circuit, "none of these conditions are perquisites to the lawful application of deadly force by an officer seizing a suspect." *Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir. 2010); *see also Scott v. Harris*, 550 U.S. 372, 382, 127 S. Ct. 1769, 1777, 167 L. Ed. 2d 686 (2007) (explaining the elements are not "a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute

'deadly force.'").

"In determining the reasonableness of the manner in which a seizure is effected, we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Scott*, 550 U.S. at 383, 127 S. Ct. at 1778 (quoting *United States v. Place*, 462 U.S. 696, 703, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983)) (internal modifications omitted). Additionally, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872 (citation omitted). This "allow[s] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Plumhoff v. Rickard*, 572 U.S. 765, 775, 134 S. Ct. 2012, 188 L. Ed. 2d 1056 (2014) (quoting *Graham*, 490 U.S. at 396-97).

As previously noted, even in excessive force cases, the facts must be viewed as "what a reasonable jury could find from the evidence viewed in the light most favorable to the non-moving party." *Cantu*, --- F.3d at ---, 2020 U.S. App. LEXIS 28074, at *4, 2020 WL 5270645, at *2. Further, "where there are 'varying accounts of what happened,' the proper standard requires [the Court] to adopt the account most favorable to the non-movants." *Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) (quoting *Perez v. Suszczynski*, 809 F.3d 1213, 1217 (11th Cir. 2016)). In the case at hand, there are sufficient contradictions and factual issues that preclude the finding that Officer Hurst shooting Moore was constitutionally permissible. Defendants place great emphasis on the fact that Officer Hurst believed that a handgun was present. The Court need not (and should not) reconcile the facts on whether a gun was ultimately present. Even if a gun were present at the scene, precedent has long established that "the mere presence of a gun or other weapon is not

enough to warrant the exercise of deadly force and shield an officer from suit." *Perez*, 809 F.3d at 1220 (citations omitted); *see also Lundgren v. McDaniel*, 814 F.2d 600, 602-03 (11th Cir. 1987) (finding presence of a handgun not dispositive and denying qualified immunity); *Knowles v. Hart*, --- F.3d ---, ---, 2020 U.S. App. LEXIS 27517, at *7-8, 2020 WL 5090393, at *3 (11th Cir. Aug. 28, 2020) (quoting *Perez* and reiterating that mere presence of gun in and of itself is not sufficient to justify using deadly force, but rather the totality of the circumstances surrounding the weapon will determine reasonableness).   The Court must look to the surrounding circumstances to determine whether Officer Hurst's actions were objectively reasonable.

Turning to the different factors, the Court looks to the first factor for guidance. Specifically, whether Officer Hurst had probable cause to believe that Moore posed a threat of serious physical harm, either to the officer or to others, or that Moore had committed a crime involving the infliction or threatened infliction of serious physical harm.   According to Officer Hurst, he activated his blue lights to stop the vehicle being driven by Moore and acknowledges that Moore pulled over.   Therefore, caselaw related to car chases is not applicable here and the vehicle itself was not a threat.   Further, even if the vehicle were stolen as Officer Hurst states, that alone does not constitute a crime involving the infliction or threatened infliction of serious physical harm.   Therefore, the Court turns to whether Officer Hurst had probable cause to believe that Moore posed a threat of serious physical harm either to himself or to others.

The lack of video in this case unfortunately leaves that issue murky.   The analysis hinges on Officer Hurst's credibility and whether you believe his version of events.   Plaintiff has presented evidence from other witnesses who indicate that Moore did not move in a threatening manner, had his hands up, and did not reach for a gun.   There is even a question as to whether a gun was on Moore when he exited the vehicle.   Though Defendant tried to get the affidavits excluded, as noted

in the opinion on evidentiary rulings, it is not for the Court to decide credibility issues or reconcile conflicting statements by a witness.  Much like the analysis in the *Perez* case, there is no evidence that clearly contradicts the Plaintiff's version of the facts and "the record plainly yields sharply dueling accounts of what happened and why the critical shots were fired."  *Perez*, 809 F.3d at 1221 (citing *Morton*, 707 F.3d at 1285).  If you credit those facts presented by Moore's estate as true, as the Court must, then a reasonable jury could conclude that Moore was not a threat of serious physical harm to Officer Hurst or anyone else.  It would have been unreasonable for Officer Hurst to shoot Moore under those circumstances.  Therefore, the use of deadly force would violate Moore's Fourth Amendment right to be free from excessive force.

### (b)  Clearly Established Law

Next, the Court must look to whether the violation of Moore's constitutional rights was clearly established.  With regard to the second prong of the analysis, courts "recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1330 (11th Cir. 2007).

In the case at hand, Moore's Fourth Amendment right to be free from the use of deadly force has long been clearly established.  Officer Hurst was on fair notice at the time of the shooting from both the Supreme Court and the Eleventh Circuit that the use of deadly force has constitutional limits, and that his use of deadly force would be justified only if a reasonable office in his position would believe that Moore posed an immediate threat of serious physical harm.  Under the Plaintiff's version of events, these circumstances do not exist.  There is conflicting evidence as to whether a gun existed or even if it did, whether Moore made any movement which

could reasonably be construed as reaching for his gun.

Moreover, as many of these deadly force cases show, there are few cases that will be factually identical.  Rather, the Court will also look beyond caselaw to whether the case at hand is one of "obvious clarity" –  i.e., where the officer's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the official], notwithstanding the lack of fact-specific case law" on point.  *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002)).  Courts have repeatedly held that the constitutional violation is clearly established even though there is no decision in a "materially similar" preexisting case." *Cantu*, --- F.3d at ---; 2020 U.S. App. LEXIS 28074, at *36-39, 2020 WL 5270645, at *12-14 (citations omitted).

If the facts as alleged by Plaintiff are believed, then, at best, Officer Hurst shot a suspect merely backing away with his hands in the air and clearly did not pose a threat and, at worst, continued to shoot him after he was already disabled and on the ground.  Even considering the vehicle may have been stolen, the unlawfulness would be readily apparent to any reasonable officer that the deadly force used would be grossly disproportionate.

### (c)      Denial of Qualified Immunity

Therefore, at this stage in the litigation, Officer Hurst is not entitled to qualified immunity on the § 1983 / Fourth Amendment excessive force claim.  To be clear, the holding today does not mean that he is entirely precluded from qualified immunity at a later point.  There are numerous disputed issues of fact which the fact finder may ultimately resolve in his favor and, therefore, permit the Court to make the legal finding of qualified immunity.  At this stage in the proceedings, however, taking the facts and evidence in the light most favorable to the Plaintiff, the Court must hold that as a matter of law the lethal force used by Officer Hurst against Moore was obviously

unreasonable and violated clearly established law.

### ii.    State Agent Immunity

Officer Hurst also asserts state agent immunity for the two state law claims brought by the Plaintiff.  Ala. Code § 6-5-338 gives police officers immunity from tort liability "arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." ALA. CODE § 6-5-338(a); *see also Ex parte City of Tuskegee*, 932 So. 2d 895, 903 (Ala. 2005).  But an officer can lose that immunity:

> (1) when the Constitution or laws of the United States, or the Constitution of [Alabama], or laws, rules, or regulations of [Alabama] enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte City of Homewood*, 231 So. 3d 1082 (Ala. 2017) (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).  In sum, the test for state agent immunity follows a similar burden-shifting framework as qualified immunity.  *Hunter v. Leeds*, 941 F.3d 1265, 1283 (11th Cir. 2019).  First, the officer must show that the claims arise from a law enforcement function.  *Ex parte City of Montgomery*, 272 So. 3d 155, 161 (Ala. 2018) (citation omitted).  Then the burden shifts to the plaintiff to show one of the *Cranman* exceptions applies.

As with the prior analysis under federal law, there is no dispute that Officer Hurst was acting in a discretionary function when stopping the vehicle and ultimately shooting Moore.  Therefore, the Court looks to the second part of the analysis.

For the same factual reasons that Officer Hurst was not entitled to qualified immunity, the Court finds that he is similarly not entitled to state agent immunity as to the allegations of

intentional conduct.  Accepting the facts in the light most favorable to the Plaintiff, a reasonable jury could conclude that he acted willfully, maliciously, or beyond his authority.

Plaintiff also alleges that Officer Hurst failed to follow the proper rules of conduct established by the City with regard to traffic stops, arrest, and use of force.[5]  An officer is not entitled to immunity from an allegation of negligence if he "fail[s] to discharge [the arrest] pursuant to detailed rules or regulations, such as those stated on a checklist."  *Ex Parte Butts*, 775 So. 2d 173, 178 (Ala. 2000); *see also Howard v. City of Atmore*, 887 So. 2d 201, 208 (Ala. 2003) ("State agent acts beyond authority and is therefore not immune when he or she 'fails to discharge duties pursuant to *detailed rules or regulations, such as those stated on a checklist.*'") (emphasis in original).

In Officer Hurst's motion for summary judgment, he provides little discussion beyond the citations to state immunity law.  However, as there is no question that Officer Hurst was acting in a discretionary function, the burden is on the Plaintiff to show an exception applies.

Plaintiff cites to the Mobile Police Department Use of Force Policy.  *See* Doc. 167, Ex. 48. The policy at issue states:

### 1.3.2   AUTHORIZED USE OF DEADLY FORCE

***Definitions***

*Deadly Force* – that level of force which a reasonable and prudent person would consider likely to cause death or great bodily harm.

*Probable Cause* – a  state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain honest and strong suspicions that a person sought to be arrested is guilty of a crime.

*Reasonable Probability* – The facts and circumstances the officer knows, or should

---

[5] In the response to the motion for summary judgment, Plaintiff relies heavily on the Expert Report by Roy Bedard.  However, as discussed in the Court's previously issued opinion, the Bedard expert report was stricken.  *See* Doc. 203.  Therefore, those references are not considered here.

know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

*Serious Physical Injury* – A bodily injury that creates a substantial risk of death; causes serious, permanent disfigurement; or results in long-term loss or impairment of the functioning of any bodily member or organ.

The following conditions must be met to justify the use of deadly force:

A. The officer has probable cause to believe any of the following:

1. The subject possesses a weapon or is attempting to gain access to a weapon under circumstances indicating an intention to use it against the officer or citizens; or
2. There exists a reasonable probability of further death or injury if a violent felon is not apprehended and the officer has exhausted all other reasonable means of apprehension;
3. A subject with the capability of inflicting death or serious injury – or otherwise incapacitating the officer – without a deadly weapon is demonstrating an intention to do so; or
4. The subject is attempting to escape from the vicinity of a violent confrontation in which he inflicted or attempted d the infliction of death or serious physical injury.

B. Application of Deadly Force:

1. When circumstances permit, a verbal warning of the intent to use deadly force shall be given.
2. When the decision is made to use deadly force, officers may continue its application until the subject surrenders or no longer poses an imminent danger.
3. When deadly force is permissible under this policy, attempts to shoot to cause minor injury are unrealistic and can prove dangerous to officers and others because they are unlikely to achieve the intended purpose of bringing an imminent danger to a timely halt.
4. Even when deadly force is permissible, officers should assess whether its use creates a danger to third parties that outweigh the benefit of its use.
5. When deadly force is used, appropriate medical aid shall be rendered, as is deemed safely possible, while awaiting the arrival of Emergency Medical Technicians.

C. Prohibited Use of Deadly Force:

Deadly force shall not be used in any misdemeanor, civil infraction, or FLEEING FELON unless the criteria are met as established in Section 1.3.2 Deadly force shall

not be used for any purpose or in any manner otherwise prohibited in this order, statute, or legal duty (See Code of Alabama Title 13A-3-27).

*Id*.

The Court agrees that to the extent Plaintiff alleges an intentional violation – specifically that Moore was unarmed and standing with his hands raised – then immunity would not apply. However, to the extent they allege negligent conduct the analysis turns out differently.

Mere "guidelines" are not enough to preclude immunity, but only "rules" that "*must* be followed by an officer." *Ex parte Brown*, 182 So. 3d 495, 506 (Ala. 2015) (emphasis in original); *see also Collar v. Austin*, Civ. Act. No. 14-0349-WS-B, 2015 U.S. Dist. 122609, at *50, 2015 WL 5444347, at *17 (S.D. Ala. Sept. 15, 2015) (quoting *Brown*). Therefore, when a policy leaves matters to the agent's discretion, it will not support a denial of immunity.

Much like in *Collar*, the policy at issue gives elements that are mandatory before deadly force is employed, but also relies upon the officer's reasonable belief. Therefore, the elements need not actually be present, as long as the officer reasonably believes they are present.

> The formation of a reasonable belief necessarily encompasses the exercise of discretion in evaluating and weighing — often, as here, in a mere instant — the many and infinitely varied circumstances that may be presented in any given situation. While it requires a reasonable belief in the danger of and need for deadly force, and while it identifies three things an officer must reasonably believe before he reasonably concludes his life is in jeopardy and that deadly force is immediately necessary to save it, the Policy does nothing to eliminate the officer's discretion in identifying and assessing the circumstances that will weigh into those calculations. It does not, for example, forbid an officer to use deadly force against someone apparently on drugs or who is presently unarmed.

*Collar*, Civ. Act. No. 14-0349-WS-B, 2015 U.S. Dist. 122609 at * 51, 2015 WL 5444347 at *18.

Therefore, as to Count III (negligence pursuant to Alabama state law against Officer Hurst in his individual capacity), Officer Hurst is entitled to state agent immunity and therefore summary judgment.

In summary, even taking facts in the light most favorable to the Plaintiff, state immunity shields Officer Hurst from negligent acts, but does not shield him from intentional acts.  Therefore summary judgment is granted as to Count III, but denied as to Count II.

**B.     The City**

The City also moves for summary judgment for the two state law claims asserted against it – negligent retention (Count IV) and unskillfulness (Count V).  The Court will address each in turn.

**i.     Unskillfullness (Count V)**

The City seeks immunity under two separate statutes – Ala. Code § 6-5-338 and Ala. Code § 11-47-190.

The City seeks the application of immunity and summary judgment on the basis that Officer Hurst is entitled to immunity under § 6-5-338(a) as that same immunity applies to the City via Ala. Code § 6-5-338(b), which states:  "This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.  No immunity is extended hereby to any private non-governmental person or entity, including any private employer of a peace officer during that officer's off-duty hours."  In short, the City's immunity under this statute is fully tethered to the ruling as it relates to Officer Hurst.  Therefore, to the extent it is granted/denied as to Officer Hurst, it is also granted/denied as to the City.  *See Borders v. City of Huntsville*, 875 So. 2d 1168, 1183 (Ala. 2003) (stating if the agent is not entitled to immunity pursuant to § 6-5-338(a), then the plain language of the statute withholds immunity from the City).

The immunity question for the City does not end there.  The City also asserts immunity under Ala. Code § 11-47-190, which states "[n]o city or town shall be liable for damages for injury

done to or wrong suffered by any person or corporation, unless such injury or wrong was done or

suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of

the municipality." In short, for the intentional actions of Officer Hurst, the City cannot be held

liable.[6] Therefore, when considering § 6-5-338 and § 11-47-190 conjunctively, the City is immune

and summary judgment is appropriate as to Count V.

### ii.    Negligent Retention (Count IV)

The City also requests summary judgment on Plaintiff's claims of negligent retention. The

City first argues that there is no such claim under Alabama law. *See* Doc. 160 at 14. Specifically

the City states "Alabama courts have not recognized that a municipality can be liable for a

supervisor's training, supervision, or retention of an employee within the confines of Ala. Code §

11-47-190." *Id*. (citing *Dial v. City of Bessemer*, Civ. Act. No. 2:14-cv-1297-RDP, 2016 U.S.

Dist. LEXIS 70355, at *18-19, 2016 WL 3054728, at *6 (N.D. Ala. May 31, 2016), and *Ott v City

of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001)).

The Court acknowledges those cases. However, in recent years, several federal courts in

---

[6] The Court acknowledges that this particular area of Alabama law gets confusing when trying to reconcile the two immunity statutes and as it relates to police officers, often results in no recourse from the City under state law. Under Alabama law, excessive force during an arrest, or assault and battery, can constitute "unskillfulness" under § 11-47-190 if it "falls below the response which a skilled or proficient officer would exercise in similar circumstances." *City of Birmingham v. Thompson*, 404 So. 2d 589, 592 (Ala. 1981); *see also Lee v. Houser*, 148 So. 3d 406, 419 (Ala. 2013) (explaining that a plaintiff may state a negligence claim against a city when an officer negligently causes or allows an assault and battery). Complicating matters further is the holding in *Borders* where the Alabama Supreme Court held that where it was unclear whether the plaintiff's claims for "assault and battery, false imprisonment and false arrest," actually asserted "vicarious liability for an intentional tort against the City," § 11-47-190 would not immunize the City "where a plaintiff alleges a factual pattern that demonstrates neglect, carelessness, or unskillfulness." *Borders*, 875 So. 2d at 1183; *see also Brown v. City of Huntsville*, 608 F.3d 724, 743 (11th Cir. 2010) (citing *Borders* and the complications). However, § 6-5-338 is clear that to the extent the officer is entitled to state agent immunity, so is the City. So unless it can be established that a policy reaches the level of "detailed rules or regulations" without discretion, then a violation of a policy for which an officer is immune necessarily cannot establish vicarious liability for the City.

this state have also noted that the Alabama Supreme Court seemingly recognized the potential for a negligent hiring, training, and supervision claim against a city.  *See, e.g., Howard v. City of Demopolis*, 984 F. Supp. 2d 1245, 1260 (S.D. Ala. 2013); *Ford v. City of Goodwater*, Civ. Act. No. 2:12-cv-1094-MHT, 2014 U.S. Dist. LEXIS 1338, 2014 WL 37857 (M.D. Ala. Jan. 6, 2014); *Hughes v. City of Montgomery*, Civ. Act. No. 2:12-cv-1007-MHT, 2013 U.S. Dist. LEXIS 158661, 2013 WL 5945078 (M.D. Ala. Nov. 6, 2013).  These cases all rely upon a 2012 Alabama Supreme Court case which recognized the potential for a negligent hiring, training, and supervision claim against the City of Montgomery.  *Berry v. City of Montgomery*, 99 So. 3d 282 (Ala. 2012).  In this case, the Alabama Supreme Court specifically stated that the defendant city failed to carry its immunity burden and was not entitled to summary judgment as to the negligent hiring, training, or supervision claims asserted against it.  *Id*. at 299.

Thus, this Court finds that according to the Alabama Supreme Court, state law does indeed appear to recognize a negligent retention-type claim under Alabama law.  The City seemed to recognize the potential for this determination (despite not citing or otherwise acknowledging the negative caselaw developments) by moving into the next argument on immunity for the claim.  *See* Doc. 160 at 14-17.

Regardless of the above, Plaintiff's claims against the City for negligent retention (and supervision) still fail because of state agent immunity.  Plaintiff acknowledges this failing in the response to summary judgment and abandons the claim.

> While Defendants have not met their burden of establishing, by competent summary judgement evidence, that the officers supervising and retaining Defendant Hurst are peace officers which grant the City immunity, Plaintiff recognizes that the record reflects that Hurst was supervised by peace officers and this oversight is easily corrected.  As such, Plaintiff will not [pursue] the negligent retention claim.

Doc. 167 at 58-59.

Page 22 of 23

The Court agrees that immunity would be applied under these circumstances and summary judgment is appropriate as to Count IV.

## V.   CONCLUSION

Based on the foregoing discussion and analysis, it is hereby **ORDERED** as follows:

(1) Defendant Harry Hurst's *Motion for Summary Judgment* (Doc. 158) is **GRANTED in part and DENIED in part**.  The motion is granted as to granted as to Count III, but denied as to Counts I and II.

(2) Defendant The City of Mobile's *Motion for Summary Judgment and Incorporated Memorandum of Law* (Doc. 160) is **GRANTED**.

**DONE** and **ORDERED** this the 30th day of September 2020.

 s/Terry F. Moorer_____
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE
